UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
:
CHAZ PERRY, et al.,                                     :
:
                                      Plaintiffs,      :
:
                    - against -                        :
:
CITY OF NEW YORK, et al.,                              :
:
                                      Defendants.     :
:
---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___3/26/2018___

13-CV-1015 (VSB)

**OPINION & ORDER**

Appearances:

Gregory K. McGillivary
Sara L. Faulman
Diana J. Nobile
Sarah M. Block
Woodley & McGillivary LLP
Washington, DC
*Counsel for Plaintiffs*

Felice B. Ekelman
Jeffrey W. Brecher
Michael A. Frankel
Adam S. Gross
Jackson Lewis P.C.
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Plaintiffs are over 2,600 current or former Emergency Medical Technicians ("EMTs"),

Paramedics, and Fire Safety Inspectors below the rank of lieutenant in the New York City Fire

Department (the "FDNY"), and bring this action against Defendants the City of New York and

the FDNY (collectively, "Defendants") to recover unpaid compensation under the Fair Labor

Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.* (Am. Compl. ¶ 1.)[1]

Before me are Plaintiffs' and Defendants' cross-motions for summary judgment. Plaintiffs' motion for partial summary judgment asks that I find that Defendants violated the FLSA by (1) failing to pay Plaintiffs for compensable work performed before and after Plaintiffs' shifts, in violation of 29 U.S.C. § 207(a); (2) paying Plaintiffs for overtime at a straight time rate, in violation of 29 U.S.C. § 207(a) and (o); and (3) failing to calculate properly the regular rate of pay, in violation of 29 U.S.C. § 207(a) and (e). (Doc. 132.) Defendants' motion for summary judgment argues that (1) Plaintiffs are not entitled to overtime compensation for hours worked that were not reported to Defendants as required by Defendants' internal procedures; (2) the "good faith" defense applies, pursuant to 29 U.S.C. § 260, such that liquidated damages are not recoverable; (3) the statute of limitations should be restricted to two years because there is no evidence of "willful infringement"; (4) the meal allowance paid to Plaintiffs was a benefit that should be exempted from calculating the regular rate of pay; and (5) plaintiffs who failed to list this action on their bankruptcy petitions are judicially estopped from pursuing their claims here. (Docs. 130, 131.) For the reasons that follow, Plaintiffs' motion for partial summary judgment, (Doc. 132), is GRANTED IN PART and DENIED IN PART, and Defendants' motion for summary judgment, (Doc. 130), is likewise GRANTED IN PART and DENIED IN PART. Additionally, because I find oral argument unnecessary to render a decision on these motions, Defendants' request for oral argument, (Docs. 160, 167), is DENIED.

## I.     **Background**

The facts relevant to the parties' cross-motions for summary judgment are discussed in the applicable sections of this Opinion and Order below.

---

[1] "Am. Compl." refers to the Third Amended Complaint, filed on July 19, 2016. (Doc. 115.)

## II.    **Procedural History**

On February 4, 2014, I approved the parties' joint stipulation agreeing to focus discovery initially on a limited set of Plaintiffs, representing approximately five percent of the total number of Plaintiffs (the "Phase I Plaintiffs") during the first phase of discovery. (Doc. 31.) During Phase I discovery, Defendants deposed thirty-eight Phase I Plaintiffs, and Plaintiffs deposed seven Rule 30(b)(6) witnesses, as well as three non-party fact witnesses. (Ekelman Aff. ¶¶ 11, 12.)[2]

On August 15, 2016, Plaintiffs and Defendants both filed pre-motion letters requesting permission to file motions for summary judgment, (Docs. 117, 118), and on August 18, 2016, they responded to each other's letters, (Docs. 121, 122). I held a pre-motion conference on August 25, 2016, and on September 1, 2016, endorsed the parties' requested briefing schedule. (Doc. 125.) In accordance with that briefing schedule, on December 7, 2016, Defendants filed their motion for summary judgment, (Docs. 130–31, 134, 136–39), and Plaintiffs filed their motion for partial summary judgment, (Docs. 132–33, 135). Plaintiffs filed their opposition papers on January 25, 2017, (Docs. 148–49, 153), as did Defendants, (Docs. 150–52), and Defendants filed their reply papers on February 8, 2017, (Docs. 157–59), as did Plaintiffs, (Docs. 155–56). Defendants also filed a letter requesting oral argument on February 8, 2017, (Doc. 160), and renewed their request on November 14, 2017, (Doc. 167). On March 7, 2017, Plaintiffs filed a notice of supplemental documents, attaching copies of amended schedules B and C filed by Plaintiff Keisha Brockington in her bankruptcy proceeding. (Doc. 161.)

Defendants filed a letter providing supplemental authority in support of their motion on

---

[2] "Ekelman Aff." refers to the Affirmation of Felice B. Ekelman, Esq. in Support of Defendants' Motion for Summary Judgment, filed on December 7, 2016. (Doc. 136.)

August 4, 2017, (Doc. 162), to which Plaintiffs responded on August 7, 2017, (Doc. 163).

Plaintiffs filed their own letter providing supplemental authority on October 2, 2017, (Doc. 164),

to which Defendants responded on October 4, 2017, (Doc. 165).  Plaintiffs filed another letter on

November 9, 2017 providing additional supplemental authority.  (Doc. 166.)

### III.　　**Legal Standard**

Summary judgment is appropriate when "the parties' submissions show that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P.

56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be

counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of

establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.*,

and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long*

*Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  "The same standard[s] appl[y] where, as here, the

parties file[] cross-motions for summary judgment . . . ." *Morales v. Quintel Entm't, Inc.*, 249

F.3d 115, 121 (2d Cir. 2001).  "[W]hen both parties move for summary judgment, asserting the

absence of any genuine issues of material fact, a court need not enter judgment for either party.

Rather, each party's motion must be examined on its own merits, and in each case all reasonable

inferences must be drawn against the party whose motion is under consideration." *Id.* (internal

citation omitted.)

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citation and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## IV.  Discussion

### A.  *Overtime Claims for Pre- and Post-Shift Work*

Plaintiffs' and Defendants' cross-motions seek summary judgment, at least in part, on the same issue—albeit each argues for the entirely opposite conclusion than the other.  Plaintiffs contend that summary judgment is warranted as to Defendants' alleged failure to pay properly compensable overtime for pre- and post-shift work.  Defendants argue that those same hours are not compensable, largely because Plaintiffs failed to report their overtime—contrary to the FDNY's procedures—such that Defendants did not "suffer or permit" the work.  Because I find that there are issues of fact such that a reasonable jury could find for either party, I deny both parties' motions for summary judgment on this issue.

### 1.  Applicable Law

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  As defined by the FLSA, to "employ" means to "suffer or permit to work."  *Id.* § 203(g).  Although the FLSA "does not define what constitutes compensable 'work,'" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 359 (2d Cir. 2011), the Second Circuit has described "work as exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities," *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008).  Therefore, if an activity is "integral and indispensable" to a principal activity, that activity is "compensable under the FLSA even if performed before or after

the regular shift." *Kuebel*, 643 F.3d at 359. As further explained in the Department of Labor's regulations:

> Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe he is continuing to work and the time is working time.

29 C.F.R. § 785.11. "Whether an activity is 'integral and indispensable' to an employee's principal activities is a fact-dependent inquiry." *Kuebel*, 643 F.3d at 359.[3]

With these standards in mind, "[t]o establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Id.* at 361. To survive summary judgment, a plaintiff need not prove the precise amount of uncompensated work, nor must he "demonstrate exactly 'how much' off-the-clock work was performed with [defendant's] knowledge." *Id.* at 365; *see also Sherald v. Embrace Techs., Inc.*, No. 11 Civ. 939(TPG), 2013 WL 126355, at *6 (S.D.N.Y. Jan. 10, 2013) ("[A] defendant is not entitled to summary judgment under the FLSA simply because the plaintiff has not precisely

---

[3] Under the so-called de minimis doctrine, "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Reich v. N.Y.C. Transit Auth.*, 45 F.3d 646, 652 (2d Cir. 1995) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946)). "An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." 29 C.F.R. § 785.47. Courts apply a three-part test under *Reich*, "holding that factors to be considered in determining whether time should be excluded from compensation as de minimis [are]: '(1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis.'" *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 719 (2d Cir. 2001) (quoting *Reich*, 45 F.3d at 652). It is appropriate to make the de minimis determination as a matter of law on summary judgment. *See id.* (applying the three-part test articulated in *Reich* to hold that fifteen minutes of preparatory work was not de minimis as a matter of law on summary judgment); *Singh v. City of N.Y.*, 524 F.3d 361, 371 (2d Cir. 2008) (applying the three-part test articulated in *Reich* to hold that commuting time was de minimis as a matter of law on summary judgment).

quantified the amount of uncompensated work he has performed, so long as a genuine issue of fact exists as to whether *some* uncompensated work was performed, defendants knew of this work, and a reasonable basis exists for calculating the amount of that work.").  The Supreme Court articulated a test in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), concerning how an employee can satisfy this burden:  (1) when an employer keeps proper and accurate records, an employee may satisfy his burden by simply securing production of those records; and (2) when the records are inaccurate or inadequate and the employee cannot offer convincing substitutes, the employee carries his burden if he proves that he performed the work and produces sufficient evidence to show the amount and extent of the work "as a matter of just and reasonable inference," at which point the burden shifts to the employer to come up with the precise amount of work performed or negate the reasonableness of the inference.  *Kuebel*, 643 F.3d at 362 (citing *Anderson*, 328 U.S. at 687–88).  The employee's burden is not high, and may be met simply by estimates based off of his own recollection.  *Id.*  In fact, the "just and reasonable inference" may apply even where an employee has "failed to properly record or claim his overtime hours," as long as the "employer knows or has reason to know that an employee is working overtime."  *Id.* at 363 (explaining that "[a]t least where the employee's falsifications were carried out at the instruction of the employer or the employer's agents, the employer cannot be exonerated by the fact that the employee physically entered the erroneous hours into the timesheets").

  With respect to an employer's knowledge, the Second Circuit has found it "clear an employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work."  *Chao*, 514 F.3d at 287.  Moreover, "[a]n employer who has knowledge that an employee is working, and who does not desire the work be

done, has a duty to make every effort to prevent its performance" and "[t]his duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." *Id.* at 288. "The mere promulgation of a rule against such work is not enough." *Id.* (quoting 29 C.F.R. § 785.13).

## 2. Application

### a. Amount of Uncompensated Work

Notwithstanding the pages devoted to stressing that the uncompensated pre- and post-shift tasks at issue here constitute "work" under the FLSA, (Pls.' Mem. 25–33),[4] Defendants do not appear to dispute the categorization of some or all of those tasks as work, (*see generally* Defs.' Opp.).[5] Instead, Defendants dispute whether Plaintiffs have adequately demonstrated for purposes of summary judgment that the uncompensated time recorded in CityTime, Defendants' electronic timekeeping method, (*see* Defs.' 56.1 ¶¶ 133–35; Pls.' Counter-56.1 ¶¶ 133–35),[6] was time working, such that the time can be considered compensable under the FLSA, (*see* Defs.' Opp. 19–23). In other words, Defendants do not seriously challenge whether the majority of the

---

[4] "Pls.' Mem." refers to the Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment, filed on December 7, 2016. (Doc. 133.)

[5] Defendants argue that at least some of the time spent engaged in uncompensated overtime—specifically, the time spent exchanging equipment or narcotics at the end of a shift—was de minimis. (*See* Defs.' Opp. 26.) Plaintiffs dispute this contention and assert that such time is not de minimis, stating that Defendants record all time on a minute-by-minute basis, that Plaintiffs spend up to six minutes per day on the exchange of equipment alone, and that these exchanges are routinely performed day in and day out. (Pls.' Reply 9.) I find that the time spent on exchanging equipment or narcotics is not de minimis since such time can or is recorded in CityTime, the exchanges can take several minutes, and occur regularly. *Cf. Reich*, 45 F.3d at 652–53 (finding time de minimis where time spent disciplining and walking dog, or cleaning after dog vomited or soiled himself, was "neither substantial, nor regularly occurring," and it would be administratively difficult to record the time).

"Defs.' Opp." refers to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment, filed on January 25, 2017. (Doc. 150.) "Pls.' Reply" refers to the Reply Brief in Support of Plaintiffs' Motion for Partial Summary Judgment, filed on February 8, 2017. (Doc. 155.)

[6] "Defs.' 56.1" refers to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, field on December 7, 2016. (Doc. 134.) "Pls.' Counter-56.1" refers to Plaintiffs' Response to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts and Statement of Additional Undisputed Material Facts, filed on January 25, 2017. (Doc. 153.)

uncompensated pre- and post-shift tasks at issue here constitute work for which Plaintiffs would ordinarily be entitled to receive compensation if performed during their shifts.

In their motion for partial summary judgment, Plaintiffs, while maintaining that at summary judgment they need only show that *some* amount of uncompensated work was performed, appear to argue that I should find all pre- and post-shift time recorded by CityTime compensable as part of the "continuous workday." (Pls.' Mem. 26–27; Pls.' Reply 7–8 & n.5.) As an initial matter, although Plaintiffs refer to the "continuous workday" rule, which provides that "periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked," *Kuebel*, 643 F.3d at 359 (quoting *Singh*, 524 F.3d at 372 n.8), Plaintiffs provide little factual support upon which to apply the rule or conclude that all time recorded in CityTime should be included as part of the continuous workday, (*see* Pls.' Mem. 26–27; Pls.' Reply 7–8 & n.5).

In any event, Plaintiffs correctly note that to survive summary judgment, they need only show that *some* amount of uncompensated work was performed. (*See* Pls.' Reply 7–8; Pls.' Opp. 20–23 & n.3 (listing work performed during pre- and post-shift time).)[7] Thus, although Defendants point to testimony from supervisors and Plaintiffs demonstrating that at least some of the time logged in was *not* time spent at work, (Defs.' Opp. 20–23; Defs.' Reply 2),[8] such that Plaintiffs may not simply cite to the CityTime records to establish uncompensated worktime, Plaintiffs have introduced enough evidence at this stage to establish that *some* amount of

---

[7] "Pls.' Opp." refers to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, filed on January 25, 2017. (Doc. 148.)

[8] "Defs.' Reply" refers to the Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, filed on February 8, 2017. (Doc. 157.)

uncompensated work was performed as a matter of "just and reasonable inference," *Kuebel*, 643

F.3d at 362, 364 (plaintiff satisfied standard where estimated one to five hours spent in overtime

each week and described method of shaving hours), (*see, e.g.*, Pls.' 56.1 ¶¶ 75–76, 78–80, 82,

84–85, 87, 89, 91–92).[9] The disputed issue concerns "the precise amount of . . . uncompensated

work," which "is one of fact for trial." *Kuebel*, 643 F.3d at 364. Additionally, although

Defendants have introduced evidence that may "negate the inference," that evidence "raises

factual and credibility questions for trial, but . . . does not afford a basis for summary judgment."

*Id.* at 365. The *Anderson* test—which "simply addresses whether there is a reasonable basis for

calculating damages, assuming that a violation has been shown"—having been satisfied by

Plaintiffs here, I turn next to the issue of whether Plaintiffs have demonstrated that there are no

disputed issues of fact concerning whether Plaintiffs "performed uncompensated work of which

[their] employer[s were] or should have been aware." *Id.* at 364–65.

## b. Actual or Constructive Knowledge

With respect to Defendants' actual or constructive knowledge as to the uncompensated

overtime, the parties have raised genuine issues of material fact as to whether Defendants knew

Plaintiffs were working off-the-clock. Specifically, Plaintiffs (1) cite to evidence supporting that

supervisors observed EMTs and Paramedics performing uncompensated work, (*see, e.g.*, Pls.'

56.1 ¶¶ 108, 111); (2) note that the CityTime system tracks the amount of uncompensated work

---

[9] "Pls.' 56.1" refers to Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue to be Tried, filed on December 7, 2016 as Exhibit 1 to the Declaration of Sara L. Faulman. (Doc. 135-1.) Defendants argue that I should disregard any paragraphs set forth in Plaintiffs' 56.1 Statement that contain multiple factual assertions or string cites without corresponding factual assertions on the basis that such paragraphs violate Local Rule 56.1. (Defs.' Opp. 17.) While it would have been preferable for Plaintiffs to separate each factual assertion into separate paragraphs, there is no explicit requirement in Local Rule 56.1 demanding this, and I decline to disregard those paragraphs in Plaintiffs' Rule 56.1 Statement containing multiple factual assertions. I also decline to disregard those paragraphs containing string cites to multiple sources of evidence, as Plaintiffs provide those citations in support of the factual assertions contained in those paragraphs. Finally, Defendants assert that Plaintiffs' Rule 56.1 Statement contains statements based on inadmissible evidence. (Defs.' Opp. 18.) My conclusions as to the parties' cross-motions rely on evidence that I deem to be admissible at trial.

on a minute-by-minute basis, (*id.* ¶¶ 31–33); (3) explain that they cannot comply with certain FDNY mandates—including being prepared at the start of their shift and maintaining all equipment—unless they engage in pre- and post-shift work, (*see, e.g.*, *id.* ¶¶ 43–44, 49, 74–80); (4) note that the City provides cash incentives in favor of starting early and that Lieutenants and Captains praise EMTs and Paramedics in their performance evaluations for arriving early, (*id.* ¶¶ 41, 98); and (5) state that Plaintiffs understood that they would not be compensated for this type of work, with a few Plaintiffs testifying that they were told they would not be paid or should "eat the time," (*see, e.g.*, *id.* ¶¶ 124–32; *see also* Pls.' Mem. 33–37; Pls.' Reply 8–14.)  However, in response, Defendants (1) dispute that supervisors observed Plaintiffs engage in overtime work, noting that the supervisors observed employees engaged in non-work activities, and explain that a supervisor observing work may not be the supervisor reviewing a CityTime submission, (*see, e.g.*, Defs.' Counter-56.1 ¶¶ 108, 111, 149–53); (2) note that FDNY rules prohibited pre- and post- shift work without a supervisor's approval, (*see, e.g.*, *id.* ¶¶ 43, 49); (3) note that Plaintiffs are not required to take emergency calls at the immediate start of the shift, and that some EMTs and Paramedics log onto the system within ten minutes after their shift even starts, (*see, e.g.*, *id.* ¶¶ 97, 99, 165–66); (4) clarify that the performance evaluations did not say Plaintiffs arrived early and began working, (*id.* ¶¶ 41–42); (5) explain that CityTime merely records time present at work, (*id.* ¶ 21), that Plaintiffs were trained to certify they submitted accurate information to CityTime and understood that they were required to submit an overtime request to be paid overtime,[10] (*id.* ¶ 115), and that Defendants did not have rules prohibiting Plaintiffs from

---

[10] In submitting their time sheets via CityTime, employees must check the following certification:

> I hereby certify the following:  The time shown correctly represents my attendance and
> activities for the week indicated.  If I am an employee eligible to earn overtime
> compensation under the FLSA and/or a collective bargaining agreement, I also certify
> that I have requested compensation for any time that I worked in excess of my

requesting overtime, (*see, e.g.*, *id.* ¶¶ 120, 122, 124, 126); and (6) note that Plaintiffs knew and routinely used Defendants' procedure for requesting overtime compensation, (*see, e.g.*, *id.* ¶¶ 125, 183–86; *see also* Defs.' Opp. 26–33; Defs.' Mem. 9–10, 11–12.)[11] Defendants' argument that Plaintiffs did not perform uncompensated work that was known to Defendants because Defendants had an established policy for tracking overtime and Plaintiffs did not report the disputed time as overtime, but rather falsely certified that they recorded all hours worked, (Defs.' Mem. 8–13), is unavailing, as those facts, in the context of the facts offered by Plaintiffs, are insufficient to grant summary judgment to Defendants. *See Kuebel*, 643 F.3d at 364–65 (holding that defendant's written policies and training manuals stating that work must be accurately reported, plaintiff's own time records, and defendant's reports showing plaintiff's low in-store hours were not enough to negate the inference that he performed overtime work); *Sherald*, 2013 WL 126355, at *6 (holding that fact that plaintiff never sought compensation was not dispositive, as knowledge could be inferred from fact that much of alleged lunchtime work involved direct communication with individual defendant or other employees of defendant, and individual allegedly saw plaintiff engage in pre-shift activities on several occasions).

Taken together, the facts identified by the parties point in the direction of opposite conclusions and neither party sufficiently discredits the facts relied upon by the other. Therefore, the facts cited by the parties raise issues of fact, including credibility issues, for trial, and do not warrant summary judgment for either side. *See, e.g.*, *Kuebel*, 643 F.3d at 356–57, 365 (finding

---

scheduled hours and that any time outside of my scheduled hours, i.e., when I may have logged in/out earlier/later than my scheduled time, for which I have not requested compensation, was time not worked.

Ekelman Aff. Ex. VV, at D030200.

[11] "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion for Summary Judgment, filed on December 7, 2016. (Doc. 131.)

that issue of fact precluded summary judgment for defendant where plaintiff testified that he had complained to his supervisor that he worked more than forty hours, notwithstanding evidence that plaintiff only recorded forty hours and was paid for overtime when he requested it); *Seward v. Int'l Bus. Machs. Corp.*, No. 08 CV 3976(VB), 2013 WL 142006, at *3–4 (S.D.N.Y. Jan. 2, 2013) (denying summary judgment where plaintiff flouted timekeeping procedures and defendant professed a lack of any expectation or reason to believe employees were engaging in pre-shift work where plaintiff stated he expressed concern about uncompensated pre-shift overtime to manager); *cf. Edwards v. City of N.Y.*, No. 08 Civ. 3134(DLC), 2012 WL 1694608, at *5 (S.D.N.Y. May 15, 2012) (where plaintiffs failed to introduce any evidence that supervisors threw out overtime slips, deposition testimony supported supervisors pressuring employees to hand in overtime slips, and plaintiffs relied on a "perceived existence of an 'unwritten rule' on overtime" without introducing any evidence, "jury would have to rely on speculation and conjecture to render a verdict in plaintiffs' favor").

As a result, Defendants' motion for summary judgment as to its liability under the FLSA for uncompensated overtime is denied, as is Plaintiffs' motion for partial summary judgment regarding the same.

### B.    *Liquidated Damages and Willful Infringement*

I turn next to Defendants' motion for summary judgment on the issues of liquidated damages and willful infringement.  Defendants argue that I should find that liquidated damages are not recoverable in this action based on Defendants' subjective good faith and objectively reasonable grounds for believing that they were complying with the FLSA.  (Defs.' Mem. 13–16.)  Defendants further contend that, for many of the same reasons, I should decide the three-year statute of limitations for willful infringers inapplicable here.  (*Id.* at 17–19.)

### 1. Applicable Law

The FLSA provides:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act . . . the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.  Assuming these conditions are met, a court "is permitted, but not required, in its sound discretion to reduce or eliminate the liquidated damages which would otherwise be required in any judgment against the employer."  29 C.F.R. § 790.22(b).  However, if an employer does not show that he meets the Act's two conditions, "the court is given no discretion by the statute, and it continues to be the duty of the court to award liquidated damages."  *Id.* What constitutes good faith and reasonable grounds is a mixed question of fact and law, and when "an employer makes the required showing, it is for the court to determine in its sound discretion what would be just according to the law on the facts shown."  *Id.* § 790.22(c).  "The employer carries the burden of 'establishing, by plain and substantial evidence, subjective good faith and objective reasonableness.'"  *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 471 (S.D.N.Y. 2006) (quoting *Reich*, 121 F.3d at 71).  The employer's burden is "a difficult one," with "double damages [being] the norm and single damages the exception."  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (citation omitted).  The good faith defense requires "evidence of at least an honest intention to ascertain what the Act requires and to comply with it."  *Bowrin*, 417 F. Supp. 2d at 472 (quoting *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987)).  This requires ascertaining "the dictates of the FLSA with respect to the issue at hand."  *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 317 (S.D.N.Y. 2011) (quoting *Barfield*, 537 F.3d at 151).

The FLSA further provides for a two-year statute of limitations. 29 U.S.C. § 255(a). However, the statute of limitations becomes three years if the FLSA violation was "willful." *Id.* "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Kuebel*, 643 F.3d at 366 (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 107 (2d Cir. 2009)). This does not include "conduct that is merely negligent or unreasonable." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015) (internal quotation marks omitted). Indeed, "[b]ecause of the difficulty in discerning, as a matter of law, whether unlawful conduct is on the one hand negligent or unreasonable, or on the other hand knowing or reckless, courts in this Circuit have generally left the question of willfulness to the trier of fact." *Id.* (internal quotation marks omitted). The employee "'bears the burden of proof' on the issue of willfulness for statute of limitations purposes." *Parada v. Banco Indus. de Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999)).

## 2. Application

Defendants cite to facts that may ultimately support a finding of good faith and, for similar reasons, weigh against a finding of willful infringement. (*See, e.g.*, Defs.' 56.1 ¶¶ 171–82, 199–207, 209–11; *see also* Defs.' Mem. 14–16, 18.) However, at this stage, when there are disputed issues of fact with respect to liability, I find that there are likewise disputed issues of fact rendering any finding as to liquidated damages or willful infringement premature. *See Kuebel*, 643 F.3d at 366 (holding that if jurors found credible evidence that plaintiff's responsibilities would push him close to forty-hour threshold and that managers conveyed to plaintiff that he should "do what it takes" and not record overtime, this may constitute a willful violation such that the question would be "properly left for trial," and "district court's

determination that liquidated damages are not available under the NYLL" was "similarly premature"); *Inclan*, 95 F. Supp. 3d at 503 (seeing "no reason in this case to depart from the general reluctance of courts to resolve the question of willfulness on a motion for summary judgment"); *see also Randolph v. PowerComm Constr., Inc.*, No. GJH-13-CV-1696, 2014 WL 4981439, at *4 (D. Md. Oct. 1, 2014) (denying summary judgment on an advice of counsel defense and holding that "[i]t would be hasty and unreflective for the Court to take on the liquidated damages inquiry before deciding whether the employer violated the FLSA"). In addition, Plaintiffs also challenge whether or not Defendants fully disclosed all relevant facts to counsel, and whether or not Defendants in fact implemented the purported legal advice that they received. (Pls.' Opp. 42–44.) Specifically, Plaintiffs argue that the evidence shows that Defendants failed to provide counsel information regarding paramedics working overlapping shifts while engaged in narcotics exchanges, (*id.* at 42), and that Defendants ignored advice they received from counsel that it is the supervisor's duty to ensure employees receive overtime when employees perform work tasks before their scheduled shifts, (*id.* at 43).

As a result, Defendants' motion for summary judgment is denied as to liquidated damages and willful infringement.

### C.    *Overtime Hours Paid at Straight Time Rate*

Plaintiffs—almost in passing—argue that Defendants also violated the FLSA by paying some overtime compensation at the straight time rate, rather than at the proper rate of one and a half times their regular pay. (*See* Pls.' Mem. 44; Pls.' Reply 14.) Defendants, however, dispute the allegation that Plaintiffs were generally paid at a straight time rate, citing to their expert's statement based upon his review of the records that this happened on rare occasions. (*See* Defs.' Counter-56.1 ¶ 140; *see also* Defs.' Opp. 33 (stating that Plaintiffs were paid overtime at a

straight time rate "on very rare occasions" and that Defendants' expert determined that "Plaintiffs' expert overstates potential loses").)[12] Thus, Defendants concede that they paid Plaintiffs at a straight time rate at least "on vary rare occasions."

Ultimately, even if it is assumed that Plaintiffs have introduced sufficient evidence to show the amount and extent of the work for which they were improperly compensated as a matter of just and reasonable inference, Defendants have also offered evidence that would tend to negate that inference. *See Anderson*, 328 U.S. at 687–88. As a result, this issue is properly left for trial and summary judgment is denied.

### D. *Calculating the Regular Rate of Pay*

Plaintiffs also move for partial summary judgment concerning Defendants' overtime calculation, arguing that Defendants violated the FLSA in two respects: (1) by failing to include compensation paid as a night shift differential, and (2) by failing to include payments titled "meal allowances," which Plaintiffs explain are "simply an extra payment made to employees who work hours outside of their scheduled hours and who opt to receive compensatory time." (Pls.' Mem. 45–46.) Defendants' motion seeks summary judgment concerning the failure to include meal allowances in the overtime calculation, stating that the meal allowances paid to Plaintiffs who worked two hours beyond their regular shift are primarily for Defendants' benefit and, therefore, should be excluded from the regular rate of pay. (Defs.' Mem. 19–23.)

### 1. Applicable Law

Under the Act, "an employee is entitled to overtime pay for each hour that his workweek exceeds forty hours." *Sherald*, 2013 WL 126355, at *4. The overtime rate of pay is the

---

[12] "Defs.' Counter-56.1" refers to Defendants' Responses to Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue to be Tried, filed on January 25, 2017. (Doc. 152.)

"'regular rate' of pay multiplied by one and one half," *id.* (citing 29 C.F.R. § 778.107), and the regular rate is "deemed to include all remuneration for employment paid to, or on behalf of, the employee," excepting eight enumerated circumstances, 29 U.S.C. § 207(e). In most cases, "the regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the work period, exclusive of overtime payments." *Scott v. City of N.Y.*, 629 F. Supp. 2d 266, 269 (S.D.N.Y. 2009) (citation omitted). Thus, "[a]n employee's regular rate of pay is the employee's average hourly rate for non-overtime hours, including all shift differentials, but excludes premium pay for holidays, overtime hours, gifts, stock, bonuses and certain other premiums." *Conzo v. City of N.Y.*, 667 F. Supp. 2d 279, 283 (S.D.N.Y. 2009). "[T]he regular rate does not include, *inter alia*, sums paid in recognition of services performed during a given period if both the fact that payment is to be made and the amount of payment are determined at the sole discretion of the employer at or near the end of the period. Nor does the regular rate include payments to an employee which are not made as compensation for his hours of employment." *Sherald*, 2013 WL 126355, at *4 (internal quotation marks omitted).

## 2. Application

### a. Night Shift Differential

The parties agree that the inclusion of night shift differentials in calculating the regular rate of pay is proper, (*see* Pls.' Mem. 46–47; Defs.' Opp. 33–34), as they must under Department of Labor regulations, *see, e.g.*, 29 C.F.R. § 778.207(b) ("The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a percent of the base rate or an addition of so many cents per hour) . . . ."). However, the parties, citing to dueling experts, disagree with respect to whether night shift differentials were, in fact, included. (*See* Pls.' Mem. 46–47; Defs.' Opp. 33–34.) Although Defendants argue that the night

shift differential "is properly included in the regular rate of pay" here, (Defs.' Opp. 33), the

portion of the expert report of Dr. Christopher Erath to which Defendants cite simply criticizes

Plaintiffs' expert's calculation and explains that "in the vast majority of instances plaintiffs in

this case did in fact have night shift differential included in determining their overtime pay rate,"

(Faulman Decl. Ex. O, at 2).[13]  The report does not explain what transpired in those other

instances.  The declaration of Plaintiffs' expert, to which Plaintiffs cite in support of their

argument that night shift differentials were not included, simply concludes that the City did not

include the night shift differential and instead provided for "makeup payments."  (Faulman Decl.

Ex. P ¶ 6.)[14]  Aside from the opposing views of these two experts, there are gaps in the facts

provided that do not permit determining which view is accurate, rendering a decision as to

whether Defendants failed to include night shift differentials in their calculation of the regular

rate improper on summary judgment.  As such, Plaintiffs' motion for summary judgment as to

this issue is denied.  *See Ramirez v. Riverbay Corp.*, 35 F. Supp. 3d 513, 533 (S.D.N.Y. 2014)

(finding summary judgment in favor of either party on nighttime differential claims

"inappropriate" where calculations presented an uncertainty and party failed to provide

supporting documentation that would enable the analysis required to resolve the uncertainty).

### b.  Meal Allowances

Plaintiffs and Defendants each move for summary judgment as to whether the so-called

"meal allowances" paid here should be included in the regular rate of pay.  Plaintiffs' argument

that the meal allowances should be included is premised on their assertions (1) that the meal

---

[13] "Faulman Decl. Ex. O" refers to the expert report of Dr. Christopher Erath, filed on December 7, 2016 as Exhibit O to the Declaration of Sara L. Faulman.  (Doc. 135-19.)

[14] "Faulman Decl. Ex. P" refers to the declaration of Louis R. Lanier, Ph.D., filed on December 7, 2016 as Exhibit P to the Declaration of Sara L. Faulman.  (Doc. 135-20.)

allowances are not paid as expense reimbursements, but rather as "working hours beyond an employee's regularly scheduled hours when that employee is paid in the form of compensatory time," and (2) that the payment is tied to the work hours of the employee, such that "the more hours worked, the greater the payment." (Pls.' Mem. 47.) On the other hand, Defendants contend that the meal allowances at issue—unlike the "meal money" also provided, which *is* included in the regular rate—are made for the benefit of the employer and are a "reimbursement of necessity, not a perk," such that those allowances should be excluded from calculating the regular rate. (Defs.' Mem. 21.)

It is undisputed that there are five codes/levels for meal allowances in the CityTime system: (1) Meal Allowance Level 1 of $8.25, which is paid out when an EMT or paramedic works two hours of compensatory time; (2) Meal Allowance Level 2 of $8.75, which is paid out when an EMT or paramedic works five hours of compensatory time; (3) Meal Allowance 3 of $10.75, which is paid out when an EMT or paramedic works seven hours of compensatory time; (4) Meal Allowance 4 of $11.75, which is paid out when an EMT or paramedic works ten hours of compensatory time; and (5) Meal Allowance Level 5 of $12.75, which is paid out when an EMT or paramedic works fifteen hours of compensatory time. (Pls.' 56.1 ¶ 143; Defs.' Counter-56.1 ¶ 143.) EMTs and paramedics are not required to provide a receipt showing the meals purchased. (Pls.' 56.1 ¶ 145; Defs.' Counter-56.1 ¶ 145.)

The proper categorization of "meal allowances" here is dependent upon whether the allowances can be considered "reasonable payments for . . . other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer, [or] other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). As explained in the Department of Labor's

regulations:

> Where an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, section 7(e)(2) is applicable to reimbursement for such expenses. Payments made by the employer to cover such expenses are not included in the employee's regular rate (if the amount of the reimbursement reasonably approximates the expenses incurred). Such payment is not compensation for services rendered by the employees during any hours worked in the workweek.

29 C.F.R. § 778.217(a). One illustrative example of such a reimbursement is "supper money," or "a reasonable amount given to an employee, who ordinarily works the day shift and can ordinarily return home for supper, to cover the cost of supper when he is requested by his employer to continue work during the evening hours." *Id.* § 778.217(b)(4).

Here, Defendants rely primarily on a Western District of Missouri decision, *Acton v. City of Columbia, Mo.*, No. 03-4159-CV-NKL, 2004 WL 2152297 (W.D. Mo. Sept. 10, 2004), *aff'd*, 436 F.3d 969 (8th Cir. 2006), as support for their position that the meal allowances should be excluded from the regular rate. (*See* Defs.' Mem. 22.) However, in *Acton*, the defendant merely provided twelve dollars per twenty-four hour shift it anticipated the firefighters would work in a six-month period. *Acton*, 2004 WL 2152297, at *1. Although a firefighter did not need to submit receipts or track his or her spending, if the firefighter did not work one of the anticipated twenty-four hour shifts, the firefighter would have to repay the defendant the corresponding meal allowance. *Id.* Moreover, the court specifically noted—in response to the plaintiffs' argument that it was not a reimbursement given the lack of any requirement to submit receipts—that the allowance was paid without any relation to the number of hours worked. *Id.* at *7. It was on the basis of these facts that the court in *Acton* held that the meal allowance should not be included in the regular wage rate and, therefore, denied the plaintiffs' motion for summary judgment. *See id.* By contrast, here, the meal allowances are clearly tied to the number of hours worked. This,

coupled with the fact that Plaintiffs were not required to provide meal receipts, supports a determination that the meal allowances were not reimbursements for expenses incurred for Defendants' benefit. Defendants' motion for summary judgment on this issue is therefore denied, and Plaintiffs' motion on this issue granted.

### E. *Estoppel By Failure to Report Claim in Bankruptcy Action*

Defendants further argue that thirty-five Plaintiffs (the "Bankruptcy Plaintiffs"), who filed bankruptcy petitions but failed to report this litigation as a claim, are now estopped from bringing their claims in this case. (*See* Defs.' Mem. 23–27.) Plaintiffs ask that I either deny Defendants' motion, or stay the Bankruptcy Plaintiffs' claims to allow the bankruptcy estates to intervene. (*See* Pls.' Opp. 44–47.)

#### 1. Applicable Law

The doctrine of judicial estoppel "is commonly applied in order to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy." *Ibok v. SIAC-Sector Inc.*, 470 F. App'x 27, 28 (2d Cir. 2012) (summary order) (internal quotation marks omitted). "Typically, judicial estoppel applies if '1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel.'" *Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 494 n.6 (S.D.N.Y. 2013) (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)). "Because the purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment, the Second Circuit limits judicial estoppel to situations where the risk of inconsistent results with its

impact on judicial integrity is certain." *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 598 (S.D.N.Y. 2013) (internal quotation marks omitted). Additionally, an exception exists "if the first statement or position at issue resulted from a good faith mistake or an unintentional error." *Id.* at 599 (internal quotation marks omitted). "[S]everal district courts in this Circuit have ruled that 'failure to disclose assets will only be deemed inadvertent or due to mistake when either the debtor has (1) no knowledge of his claims or (2) no motive to conceal the claims." *Id.* (internal quotation marks omitted).

## 2. Application

With respect to all but six of the Bankruptcy Plaintiffs—Yanina Drebskaya, Raymond Edward Laurie, Richard Machado, Marc Mastros, Victor A. Potito, and Suchingh Singh[15]—the Bankruptcy Plaintiffs' claims for overtime compensation under the FLSA are "clearly inconsistent with [their] representation[s] to the bankruptcy court[s] that no such claim[s] existed."[16] *Azuike*, 962 F. Supp. 2d at 599. Furthermore, by discharging the Bankruptcy Plaintiffs' debts and closing these cases, the bankruptcy courts adopted the Bankruptcy Plaintiffs' representations. *See id.* Permitting the assertion of these claims now would "allow [the Bankruptcy Plaintiffs] to enjoy an unfair advantage at the expense of [their] former creditors, who had a right to consider the claims during the bankruptcy proceeding[s]." *BPP Ill.,*

---

[15] These six identified Plaintiffs all filed bankruptcy petitions prior to the February 13, 2013 filing of the initial complaint. (*See* Pls.' Counter-56.1 ¶¶ 243–45 (Drebskaya, filed November 24, 2012, discharged February 20, 2013), ¶¶ 262–64 (Laurie, filed September 21, 2012, discharged March 19, 2013), ¶¶ 268–70 (Machado, filed November 27, 2012, discharged February 22, 2013), ¶¶ 271–73 (Mastros, filed November 7, 2012, discharged February 6, 2013), ¶¶ 294–97 (Potito, filed October 3, 2012, discharged January 8, 2013), ¶¶ 316–18 (Singh, filed December 29, 2012, discharged June 4, 2013).) Therefore, my decision as to the remaining Bankruptcy Plaintiffs does not apply to these six. Rather, with respect to these six, Defendants' motion for summary judgment is denied.

[16] Three of the Bankruptcy Plaintiffs—Andrey Kirichenko, Hector Alberto Montes, and Joanne Pena—were not a part of the original complaint. However, these plaintiffs all still filed bankruptcy petitions *after* joining the case.

*LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 194 (2d Cir. 2017).[17]  Additionally, I cannot conclude that the Bankruptcy Plaintiffs' failures to identify this claim in their respective bankruptcy proceedings were the result of "good faith mistake[s] or . . . unintentional error[s]," as the Bankruptcy Plaintiffs clearly had a motive to conceal the claim in order to put recovery "beyond the reach of [their] creditors." *Azuike*, 962 F. Supp. 2d at 599–600; *see also Amash v. Home Depot U.S.A., Inc.*, 503 B.R. 232, 237 (N.D.N.Y. 2013) (finding that plaintiff's belief that case was not real or was a scam was belied by consent to join action and phone calls with attorneys discussing the claim, and motive established from motive to conceal asset to have bankruptcy plan approved and obtain re-classification of debt).

As a result, with the exception of the six Bankruptcy Plaintiffs identified above whose bankruptcy proceedings were filed before this action, the Bankruptcy Plaintiffs are judicially estopped from pursuing their claims.  Defendants' motion for summary judgment as to the Bankruptcy Plaintiffs, except for the six named above, is therefore granted, and those plaintiffs are dismissed.  However, my decision as to judicial estoppel does not address the Bankruptcy Plaintiffs' ability to pursue the reopening of their respective bankruptcy actions, such that their respective bankruptcy estates can later attempt to join this action and pursue those claims.  *Cf. BPP Ill.*, 2015 WL 6143702, at *10 (finding judicial estoppel applied but staying case to allow bankruptcy estate to decide whether to pursue claims).  This decision also does not address Defendants' ability to challenge the attempt by the bankruptcy estates of any of the Bankruptcy Plaintiffs to rejoin this action at a later date.

---

[17] The fact that one of the Bankruptcy Plaintiffs has begun the process of reopening her bankruptcy proceeding, (*see* Pls.' Counter-56.1 ¶¶ 223–24; Doc. 161), is irrelevant, as "allowing a debtor to back-up, re-open the bankruptcy case, and amend [her] bankruptcy filings, only after [her] omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if [she] is caught concealing them." *Azuike*, 962 F. Supp. 2d at 599 (internal quotation marks omitted).

F.     *Plaintiffs' Motion to Strike*

In their opposition to Defendants' motion for summary judgment, Plaintiffs further move to strike certain portions of Defendants' expert's declaration, (Doc. 138), which they argue contains undisclosed expert opinions.  (Pls.' Opp. 47–49.)  Because I do not rely on these portions of the expert's declaration in issuing my decision, I need not address that issue at this time.

V.     <u>Conclusion</u>

For the foregoing reasons, Plaintiffs' motion for partial summary judgment, (Doc. 132), is GRANTED as to their argument that meal allowances should be included as part of the regular rate of pay, but DENIED in all other respects.  Defendants' motion for summary judgment, (Doc. 130), is GRANTED with regard to their argument that the Bankruptcy Plaintiffs, excepting the six identified above, are judicially estopped from pursuing their claims, and DENIED in all other respects.  A conference to discuss Plaintiffs' motion to strike certain portions of Defendants' expert's declaration, as well as any other remaining issues, shall be held on April 20, 2018 at 1:30 p.m. in Courtroom 518 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.  The Clerk of Court is respectfully directed to terminate the open motions at Documents 130 and 132.

SO ORDERED.

Dated:  March 26, 2018
        New York, New York

Vernon S. Broderick
United States District Judge