**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHAZ PERRY, et al.,

                              Plaintiffs,

              -against-

THE CITY OF NEW YORK AND THE NEW
YORK CITY FIRE DEPARTMENT.

                           Defendants.

Case No.: 13 CIV 1015 (VSB)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OMNIBUS MOTIONS *IN LIMINE*

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000
Felice.Ekelman@jacksonlewis.com
Mark.Mancher@jacksonlewis.com
Michael.Frankel@jacksonlewis.com

-and -

Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007
aoconnor@law.nyc.gov

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................................6

STANDARD OF REVIEW ...........................................................................................................7

ARGUMENT ..................................................................................................................................8

I.   EVIDENCE AND ARGUMENT REGARDING THE EXISTENCE OF OTHER
     LITIGATION AND/OR SETTLEMENT AGREEMENTS INVOLVING THE CITY OF
     NEW YORK OR ANY OF ITS AGENCIES MUST BE PRECLUDED ............................8

     A.  Evidence and/or Argument Regarding Prior Settlement Agreements Entered into by the
         City Are Inadmissible Pursuant to Fed. R. Evid. 408 .............................................8

     B.  Evidence and/or Argument Regarding Prior Settlement Agreements and Litigation
         Involving the City Are Also Precluded Under Fed. R. Evid. 402 and/or 403 .................11

II.  PLAINTIFFS SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OR
     ARGUMENT REGARDING WHETHER FDNY EMPLOYEES RECEIVED
     TRAINING ON THE LEGAL DEFINITION OF WORK OR THE DEFINITION OF
     COMPENSABLE TIME UNDER THE FLSA ...................................................................16

III. PLAINTIFFS SHOULD BE PRECLUDED FROM QUESTIONING PLAINTIFFS
     JAMIL PEREZ AND EDWIN GONZALEZ REGARDING THEIR EXPERIENCES,
     JOB DUTIES AND RESPONSIBILITIES AS LIEUTENANTS ........................................19

     A.  Defendants Would Suffer Unfair Prejudice if Plaintiffs Perez and Gonzalez Are
         Permitted to Testify Regarding their Experiences as Lieutenants Because Defendants
         Did Not Have an Opportunity to Depose them about these Topics ..................................20

     B.  Plaintiffs' Perez's and Gonzalez's Testimony Regarding their Experiences and
         Responsibilities as Lieutenants must also Be Excluded Under Fed. R. Evid. 403
         Because it Is Cumulative and Duplicative ...............................................................21

IV.  PLAINTIFFS SHOULD BE PRECLUDED FROM CALLING CHIEF CESAR
     ESCOBAR OR ASSISTANT COMMISSIONER STEPHEN RUSH AS TRIAL
     WITNESSES BECAUSE THEIR TESTIMONY HAS LIMITED OR NO PROBATIVE
     VALUE AND IS CUMULATIVE OF OTHER TRIAL WITNESSES' TESTIMONY...23

A.  Plaintiffs Should Be Precluded from Calling Chief Cesar Escobar as a Trial Witness Because His Testimony Is Entirely Duplicative of the Testimony of Trial Witness Chief Christopher Bilz ....................................................................................................................23

B.  Plaintiffs Should Also Be Precluded from Calling Stephen Rush as a Trial Witness Because His Testimony has No Probative Value and Is Entirely Cumulative of the Testimony of Georgia Pestana ..........................................................................................24

V.    PLAINTIFFS SHOULD BE PRECLUDED FROM OFFERING EVIDENCE REGARDING FLSA-EXEMPT CITY EMPLOYEES .........................................................26

VI.   PLEADINGS AND OTHER LEGAL DOCUMENTS ARE IMPROPER AS TRIAL EXHIBITS AND MUST BE EXCLUDED............................................................................28

VII.  LOUIS LANIER'S EXPERT REPORTS AND ATTACHMENTS SHOULD BE EXCLUDED BECAUSE THEY CONTAIN INADMISSABLE HEARSAY, ARE CUMULATIVE OF HIS LIVE TESTIMONY AND WILL SERVE TO CONFUSE THE JURY....................................................................................................................................29

VIII. THE 107 PERFORMANCE EVALUATIONS PLAINTIFFS SEEK TO INTRODUCE SHOULD BE EXCLUDED BECAUSE THEY HAVE LIMITED PROBATIVE VALUE AND WILL SERVE TO CONFUSE THE JURY...............................................................31

CONCLUSION ...............................................................................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bynum v. Metro. Transp. Auth.,
  No. 01-CV-7945 (CLP), 2006 U.S. Dist. LEXIS 98617 (E.D.N.Y. Nov. 21,
  2006) ................................................................................................................................15

Coleman Motor Co. v. Chrysler Corp.,
  525 F.2d 1338 (3d Cir. 1975)....................................................................................9, 10

Colon v. BIC USA, Inc.,
  199 F.Supp.2d 53 (S.D.N.Y. 2001) ...........................................................................3, 16

Conzo, et al., v. City of New York, et al.,
  No. 05-cv-705 (MGC) ............................................................................................ *passim*

Donato v. Serv. Experts, LLC,
  No. 17-cv-436, 2018 U.S. Dist. LEXIS 167511 (N.D.N.Y. Sept. 28, 2018)...........................13

Ebewo v. Martinez,
  309 F. Supp. 2d 600 (S.D.N.Y. 2004)..................................................................24, 25

Figueroa v. Boston Sci. Corp.,
  2003 U.S. Dist. LEXIS 10936 (S.D.N.Y. 2003).............................................................6

Giladi v. Strauch,
  2007 U.S. Dist. LEXIS 8666 (S.D.N.Y. Feb. 6, 2007)...............................................17, 19

Hart v. RCI Hospitality Holdings, Inc.,
  90 F.Supp.3d 250 (S.D.N.Y. 2015) ...............................................................3, 4, 8, 11

International Minerals & Res., S.A. v. Pappas.,
  96 F.3d 586 (2d Cir. 1996)........................................................................................3, 16

Kaufman v. Columbia Mem. Hosp.,
  2014 U.S. Dist. LEXIS 108798 (N.D.N.Y. Aug. 7, 2014) .............................................4

Kroustallis, et al. v. the City of New York, et al.,
  16-cv-8421 (GBD).............................................................................................6, 7, 10, 11

L-3 Communs. Corp. v. OSI Sys.,
  2006 U.S. Dist. LEXIS 19686 (S.D.N.Y. Apr. 11, 2006).............................................15

Luce v. United States,
  469 U.S. 38 (1984)...........................................................................................................2

iii

McKibben v. Philadelphia & R. Ry. Co.,
251 F. 577 (3d Cir. 1918)..............................................................................................10

In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,
2008 U.S. Dist. LEXIS 37331 (S.D.N.Y. May 7, 2008).............................................17

MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP,
232 F. Supp. 3d 558 (S.D.N.Y. 2017)..................................................... *passim*

News Am. Mktg. FSI LLC v. MGA Entm't, Inc.,
187 F. Supp. 3d 476 (S.D.N.Y. 2016)...........................................................................6

Nibbs v. Goulart,
822 F. Supp. 2d 339 (S.D.N.Y. 2011)...........................................................................9

Palmieri v. Defaria,
88 F.3d 136 (2d Cir. 1996)............................................................................................2

Perez v. Westchester Co. Dept. of Corr.,
587 F.3d 143 (2d Cir. 2009)..........................................................................................4

Ramos v. City of New York, et al.,
13-cv-9225 (KBF).......................................................................... *passim*

Richmond v. General Nutrition Ctrs., Inc.,
2012 U.S. Dist. LEXIS 32070 (S.D.N.Y. 2012)...........................................................6

Shatkin v. McDonnell Douglas Corp.,
727 F.2d 202 (2d Cir. 1984).........................................................................................2

United States v. Beech-Nut Nutrition Corp.,
871 F.2d 1181 (2d Cir. 1989)........................................................................................2

**Statutes**

Fair Labor Standards Act ("FLSA") ........................................................... *passim*

**Other Authorities**

Fed. R. Evid. 104(a) .......................................................................................................2

Fed. R. Evid. 401 ..........................................................................................1, 13, 21, 26

Fed. R. Evid. 402 ............................................................................................... *passim*

Fed. R. Evid. 403 ............................................................................................... *passim*

Fed. R. Evid. 408 ..........................................................................................1, 3, 4, 5, 6

Fed. R. Evid. 801(c)................................................................................................................22

Fed. R. Evid. 802 .............................................................................................................1, 25

Fed. R. Civ. Proc. 26(a)(1)(D)(i) .........................................................................................24

Fed. R. Civ. Proc. 26(a)(2)(D)(i) .........................................................................................25

Fed. R. Civ. Proc. 30(b)(6) .............................................................................................23, 24

## PRELIMINARY STATEMENT

Defendants the City of New York (the "City") and the New York City Fire Department ("FDNY") (collectively, "Defendants") hereby submit this memorandum of law in support of their omnibus motions *in limine*, respectfully seeking an order precluding Plaintiffs from making reference to or introducing evidence, testimony or argument at trial that is prohibited by Federal Rules of Evidence 401, 402, 403, 408 and/or 802. Specifically, Defendants seek an order precluding Plaintiffs from:

1.  Introducing testimony, argument or evidence regarding the existence of other litigation and/or settlement agreements involving the City of New York or any of its agencies;

2.  Introducing testimony, argument or evidence regarding whether FDNY employees received training on the legal definition of work or the definition of compensable time under the Fair Labor Standards Act ("FLSA");

3.  Questioning Plaintiffs (and identified trial witnesses) Jamil Perez and Edwin Gonzalez regarding their experiences, job duties and responsibilities as Lieutenants;

4.  Calling Chief Cesar Escobar or Assistant Commissioner Stephen Rush as trial witnesses;

5.  Offering evidence regarding FLSA-exempt City employees;

6.  Introducing pleadings and other legal documents as trial exhibits;

7.  Introducing Louis Lanier's expert reports and attachments as trial exhibits; and

8.  Introducing 107 separate performance evaluations as trial exhibits.

As addressed in detail below, Plaintiffs should be precluded from introducing evidence, argument and testimony concerning these issues, or calling any of the above-named witnesses, because this information is irrelevant, unfairly prejudicial to Defendants or would serve no

purpose other than to needlessly delay a trial that is already scheduled to last for nearly a full month.

**STANDARD OF REVIEW**

"Preliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence shall be determined by the court."  Fed. R. Evid. 104(a).  Motions *in limine* allow courts to rule on the relevance or admissibility of certain evidence prior to it being offered at trial.  See, e.g., Luce v. United States, 469 U.S. 38, 41, n.4 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (remarking that motions *in limine* "aid in the trial process" by enabling courts to make prior rulings on evidence to assist in avoiding "lengthy argument at, or interruption of, the trial").  Rule 402 of the Federal Rules of Evidence precludes irrelevant evidence from being presented to a jury as inadmissible.  See Fed. R. Evid. 402 ("All relevant evidence is admissible, except as otherwise provided by . . . these rules . . . Evidence which is not relevant is not admissible.").

The Court is "vested with wide discretion in determining whether an adequate foundation has been laid for admission of the evidence and whether its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury." Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 207 (2d Cir. 1984); see also United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1193 (2d Cir. 1989) (citing Fed. R. Evid. 403). Evidence is prejudicial if it at all involves some adverse effect on a party and should be excluded if it creates "an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one."  Fed. R. Evid. 403, advisory committee's notes.  Evidence is also subject to exclusion under Fed. R. Evid. 403 "where its probative value is 'substantially outweighed' by considerations of, *inter alia*, needless presentation of cumulative evidence.  A district judge has discretion to exclude evidence if it is cumulative of evidence already in the

7

record." Colon v. BIC USA, Inc., 199 F.Supp.2d 53, 96 (S.D.N.Y. 2001), *alteration in original*;

see also International Minerals & Res., S.A. v. Pappas., 96 F.3d 586, 596 (2d Cir. 1996).

## ARGUMENT

**I.     EVIDENCE AND ARGUMENT REGARDING THE EXISTENCE OF OTHER LITIGATION AND/OR SETTLEMENT AGREEMENTS INVOLVING THE CITY OF NEW YORK OR ANY OF ITS AGENCIES MUST BE PRECLUDED**

Plaintiffs should be precluded from introducing evidence or argument regarding the existence of other litigation and/or settlement agreements involving the City of New York or any of its agencies. Plaintiffs' trial exhibit list contains a multitude of documents—including two settlement agreements—relating to two prior and one current litigation involving the City.[1] The facts and dispositions of these—or any other—litigations involving the City are entirely irrelevant to the issues of this case and therefore must be precluded under Fed. R. Evid. 402. Further, prior settlement agreements and discussions are also inadmissible under Fed. R. Evid. 408. Finally, even if evidence and argument regarding current and/or prior litigations and settlement agreements were relevant, which they are not, they still must be precluded here under Fed. R. Evid. 403 because their introduction is unfairly prejudicial, likely to confuse the jury and will delay a trial that is already slated to last for nearly a full month.

**A.     Evidence and/or Argument Regarding Prior Settlement Agreements Entered into by the City Are Inadmissible Pursuant to Fed. R. Evid. 408**

Fed. R. Evid. 408 prohibits the introduction of evidence at trial of compromise offers and negotiations. Fed. R. Evid. 408; see Hart v. RCI Hospitality Holdings, Inc., 90 F.Supp.3d 250, 284 (S.D.N.Y. 2015). This court has held that prior settlement offers and agreements are "clearly inadmissible." Hart, 90 F.Supp.3d at 284. Furthermore, "[i]t is well settled that '[a] settlement neither requires nor implies any judicial endorsement of either party's claims or

---

[1]     See Declaration of Felice B. Ekelman (hereinafter Ekelman Decl.), Exh. A, Plaintiffs' Exhibits 34-35, and 48-65.

8

theories.'"    Kaufman v. Columbia Mem. Hosp., 2014 U.S. Dist. LEXIS 108798, at *10 (N.D.N.Y. Aug. 7, 2014) (citing Bates v. Long Island Railroad Co., 997 F.2d 1028, 1038 (2d Cir. 1993)); see also Perez v. Westchester Co. Dept. of Corr., 587 F.3d 143, 148 (2d Cir. 2009) ("The settlement did not constitute an admission of liability.").    Rule 408 prohibits the use of settlements at trial to either "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408.  The rationale behind precluding settlements as evidence at trial justly prevents a trial from devolving into "a series of mini-trials over prior allegations of [wrongdoing].  Moreover, the probative value of such evidence would be substantially outweighed by prejudice, confusion, and delay." Kaufman, 2014 U.S. Dist. LEXIS 108798, at **11-12 (citing to Fed. R. Evid. 403).

For example, in Hart, the plaintiffs indicated in the joint pretrial order that they intended to introduce evidence of prior settlement agreements entered into by the defendants.    In precluding this evidence, the Court explained that "[a]lthough Rule 408 is not 'a blanket rule of inadmissibility,' its obvious purpose 'is to facilitate open and wide-ranging settlement discussions.'" Id.  (quoting Carr v. Health Ins. Plan of Greater N.Y., Inc., No. 99-cv-3706, 2001 U.S. Dist. LEXIS 6766 at *13 (S.D.N.Y. May 23, 2001)).

Similar to the plaintiffs in Hart, Plaintiffs here seek to introduce evidence of settlement agreements entered into by the City in two prior litigations.[2]  Should Plaintiffs be allowed to introduce evidence and argument regarding these prior settlement agreements, it would undermine the purpose of Fed. R. Evid. 408 — to encourage parties to engage in open, meaningful settlement negotiations without fear of these discussions being used against them in the future.  This protection is especially important for the City, which employs over 300,000

---

[2]      The two prior litigations are Conzo, et al., v. City of New York, et al., No. 05-cv-705 (MGC) ("Conzo") and Ramos v. City of New York, et al.,13-cv-9225 (KBF) ("Ramos").

people (more than any other city in the country and more than any state except for California, Texas and New York) and is named as a defendant in dozens of litigations filed every day. Permitting Plaintiffs to use prior settlement agreements as evidence of some sort of wrongdoing in this, or any, trial would thwart the purpose of Rule 408. See Fed. R. Evid. 408, advisory committee's notes (explaining that the encouragement of free communication between the parties is the "purpose of the rule").

Finally, Plaintiffs' counsel here also represented the plaintiffs in the Conzo matter. Two of the trial witnesses identified by both the City and plaintiffs, Michael Fields and Christopher Bilz, were plaintiffs in Conzo and, therefore, were Plaintiffs' counsel's clients. Plaintiffs are now seeking to introduce – what they identify as a – "Total Damages Check" issued to these defense witnesses into evidence at trial. While these "Total Damages Checks" were not produced in discovery, Plaintiffs' counsel questioned Fields and Bilz about the document at their depositions in August 2019. Plaintiffs' counsel asked Fields and Bilz questions about their knowledge of the claims in the Conzo matter and why they received damages in that settlement. Presumably Plaintiffs' counsel would seek to elicit the same testimony at trial. As per the settlement stipulation in Conzo, Plaintiffs' counsel performed a calculation to determine the amount of liquidated damages owed to Fields and Bilz. If Fields and Bilz have any information regarding how or why those calculations were performed, such information necessarily would have had to come from Plaintiffs' counsel and would – of course – be privileged. It is simply incredible that Plaintiffs' counsel is seeking to elicit privileged testimony from their former clients in order to bolster the claims of their current clients. Such tactics should not be permitted as they are wholly at odds with and completely undermine the principles upon which Rule 408 is founded.

Accordingly, all testimony, argument and evidence regarding prior settlement agreements entered into by the City must be precluded under Fed. R. Evid. 408.

**B.      Evidence and/or Argument Regarding Prior Settlement Agreements and Litigation Involving the City Are Also Precluded Under Fed. R. Evid. 402 and/or 403**

Testimony, argument and evidence regarding prior settlement agreements and current and former litigation involving the City are entirely irrelevant to the trial in this case.  "Courts routinely exclude evidence relating to previous litigation involving one or both of the same parties where the merits of those prior litigations would become inextricably intertwined with the case at bar." MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP, 232 F. Supp. 3d 558, 568 (S.D.N.Y. 2017) (citing Arlio v. Lively, 474 F.3d 46, 53 (2d Cir. 2007)); see also News Am. Mktg. FSI LLC v. MGA Entm't, Inc., 187 F. Supp. 3d 476, 481 (S.D.N.Y. 2016).  Moreover, settlement agreements "carry little evidentiary weight because they are too tightly bound to the incentive to avoid litigation to cast much light on the underlying merits of the case."  MF Global Holdings Ltd., 232 F. Supp. 3d at 568 (excluding prior settlement agreement because the evidence was deemed "irrelevant and unfairly prejudicial") (quoting Sanders v. Madison Square Garden, L.P., 525 F. Supp. 2d 364, 369 (S.D.N.Y. 2007).

Here, the probative value of introducing any testimony about three cases referenced in Plaintiffs' exhibit list—Conzo, Ramos and Kroustallis, et al. v. the City of New York, et al., 16-cv-8421 (GBD)—is outweighed by the prejudicial effect, and any such evidence will be very confusing to the jury.  See Richmond v. General Nutrition Ctrs., Inc., 2012 U.S. Dist. LEXIS 32070, at *31 (S.D.N.Y. 2012) (precluding the introduction of evidence of lawsuits against defendant because "the risk of unfair prejudice and confusion from introducing documents reflecting allegations in other cases clearly outweighs the probative value of such claims"); see also Figueroa v. Boston Sci. Corp., 2003 U.S. Dist. LEXIS 10936, at *11 (S.D.N.Y. 2003)

11

(finding that the probative value of introducing evidence of other lawsuits is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, and considerations of undue delay and waste of time").  Moreover, Kroustallis is currently in active litigation.  As such, the mere fact that a lawsuit was filed has absolutely no probative value to this case.   As to Conzo and Ramos, the probative value of these prior lawsuits is extremely low while the prejudicial effect of this evidence is extremely high.

Importantly, Conzo, Ramos and Kroustallis are all factually distinguishable from the case at bar.  Ramos and Kroustallis were/are limited to plaintiffs who hold supervisory titles within EMS—i.e. lieutenants and captains—and thus did/do not involve the positions at issue here.[3] While the plaintiffs in Conzo worked in the same positions as the Plaintiffs in this case, the complaint in Conzo was filed in 2005.  The City's CityTime timekeeping system, constituting the core factual basis for Plaintiffs' claims in the instant matter, was not implemented until 2009. This crucial distinction renders the Conzo litigation entirely irrelevant.  Irrelevant evidence and argument must be precluded under Fed. R. Evid. 402.

Even if Plaintiffs do not intend to use these previous litigations to bolster their arguments on liability but instead to demonstrate that Defendants' alleged violations of the FLSA are willful, courts in this Circuit have explicitly rejected the admissibility of prior lawsuits and settlement agreements for such purpose.  Allowing Plaintiffs to use evidence of prior lawsuits and settlements to demonstrate willfulness "would be an invitation to bootstrapping.  It would allow plaintiffs to file suit, solicit settlement offers, and perhaps receive them; define the class period to extend past the filing date of the lawsuit; and then use the fact of the suit or the settlement offers as proof at trial of defendants' willfulness for not changing course after the suit

---

[3]    The Kroustallis case, despite being filed in 2016, is still in its infancy.

was filed." Hart, 90 F. Supp. 3d at 287. To be clear, in none of these prior lawsuits have Defendants been found by a judge or a jury to have engaged in unlawful conduct.

Finally, even if this Court finds that evidence and argument regarding prior litigations and settlement agreements bear some relevance, they are unfairly prejudicial and risk substantial jury confusion, warranting preclusion under Fed. R. Evid. 403. "Courts routinely exclude 'evidence relating to previous litigation involving one or both of the same parties' where the merits of those prior litigations would 'become inextricably intertwined with the case at bar.'" MF Global Holdings Ltd., 232 F.Supp.3d at 568 (quoting Arlio, 474 F.3d at 53). In MF Global Holdings Ltd., Judge Marrero explained his decision to preclude evidence at trial of prior litigations because "[t]he jury could easily confuse any evidence regarding the merits of [a prior action] with the merits of this case, causing undue prejudice." Id. Judge Engelmayer reached the same conclusion in Hart, finding that references to prior litigations or settlement agreements involving the defendants would create an opportunity for a "trial within a trial" and cause the jury to confuse the issues that had already been litigated and resolved with the issues currently before them:

> [A]ny limited relevance presented by the fact of these lawsuits and settlement offers would be overwhelmed by the possibility of confusion, unfair prejudice, and delay. There would be a very significant risk that a jury would misunderstand the fact of a settlement offer as an admission of liability, even though, by its terms and viewed in its context, it is not. . . .It goes without saying that these subjects have enormous capacity to introduce unfair prejudice—primarily to defendants, but also potentially to plaintiffs—and also delay.

Hart, 90 F.Supp.3d at 287.

The risk of unfair prejudice to Defendants here is substantial. Plaintiffs' exhibit list identifies wage and hour cases involving both the City and employees of the Fire Department,

which will inherently cause jurors to assume that those cases—which are all factually distinguishable—must be similar to the case before them.  Indeed, any use of prior lawsuits to impeach a defendant "invites the jury to draw the conclusion that [the] defendant regularly [acts improperly]."    Nibbs v. Goulart, 822 F. Supp. 2d 339, 349 (S.D.N.Y. 2011).    In addressing whether evidence of prior verdicts, which actually carry precedential weight unlike settlements or mere filings, Judge Preska noted in Guidi v. Inter-Continental Hotels Corp.:

> Rule 403 is also properly utilized to prevent the jury from reaching its decision based on a prior finding - in essence, ratifying the earlier decision - instead of basing its verdict on the evidence presented in the instant case.  See, e.g., Coleman Motor Co. v. Chrysler Corp., 525 F.2d 1338, 1351 (3d Cir. 1975) ("A jury is likely to give a prior verdict against the same defendant more weight than it warrants."); City of New York v. Pullman, Inc., 662 F.2d 910, 915 (2d Cir. 1981) (administrative report properly excluded under Rule 403 because "the report would have been presented to the jury in 'an aura of special reliability and trustworthiness' which would not have been commensurate with its actual reliability").

2003 U.S. Dist. LEXIS 6385 at *3 (S.D.N.Y. April 16, 2003).

In Coleman, the court granted a new trial because the trial court had allowed the plaintiff to disclose to the jury an adverse verdict that had been made against the defendant in a prior case that involved identical issues.  In granting defendants' motion for a new trial, the court explained that:

> We consider . . . the references to the prior verdict in examining another witness, and arguing the verdict to the jury to be prejudicial and to require a new trial.  See, e.g., Garris v. McClain, 399 Pa. 261, 160 A.2d 398, 400 (1960); Annotation 15 A.L.R. 3d 1101 (1967).
>
> Even if the jury had been adequately informed of the issues and evidence in [the prior lawsuit], we would disapprove of the introduction of that verdict. A jury is likely to give a prior verdict against the same defendant more weight than it warrants. The admission of a prior verdict creates the possibility that the jury will

> defer to the earlier result and thus will, effectively, decide a case on evidence not before it. We will not speculate about the role the [verdict in the prior case] played in this jury's deliberations, especially since there is another reason why we must grant defendants a new trial. It is sufficient that knowledge of the prior verdict could have influenced the jury's decision on either count so that the defendant was unduly prejudiced.
>
> As this court long ago stated in a similar context:
>
> The statement made by counsel of the plaintiff in his argument to the jury as to what had been done by other juries in former trials of this case . . . are in a federal court deemed so improper as to warrant opposing counsel to request, and courts of their own motion to direct, the withdrawal of a juror and the continuance of a cause . . .
>
> McKibben v. Philadelphia & R. Ry. Co., 251 F. 577, 578 (3d Cir. 1918).

Coleman, 525 F.2d at 1351.

Further, the settlement agreements in Ramos and Conzo, which were approved by Judge Cederbaum and Judge Forrest, respectively, explicitly include provisions in which defendants deny any liability whatsoever.  The language in the Conzo agreement, which is substantially similar to the language used in Ramos, states that:

> Defendants do not admit any allegations made against them in any charges, complaints, grievances or Lawsuits currently pending between the Parties.  Nothing in this Agreement shall be deemed an admission of liability or of any violation of any applicable law, rule, regulation, order or contract of any kind.

Ekelman Decl., Exh. B at p. 9.  Using these cases—or the Kroustallis case which is in its early stages—to demonstrate that Defendants acted unlawfully or willfully is blatantly prejudicial given that Defendants strenuously denied (or, in the matter of Kroustallis, deny) liability in all three cases.  This is true of any other prior or concurrent litigation that Plaintiffs may seek to introduce at trial.  In short, requiring Defendants to put forth evidence to rebut Plaintiffs' claims

15

regarding the <u>Conzo</u>, <u>Ramos</u> and <u>Kroustallis</u> cases—as well as any other litigations involving the parties that Plaintiffs seek to reference at trial—will cause the exact type of confusion, unfair prejudice, and delay that warranted the exclusion of prior litigations and settlements in <u>Hart</u> and <u>MF Global Holdings Ltd.</u>   Thus, Defendants respectfully request that this Court preclude Plaintiffs from offering evidence or argument at trial regarding other existence of other litigation and/or settlement agreements involving the City of New York or any of its agencies.

## II.    PLAINTIFFS SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OR ARGUMENT REGARDING WHETHER FDNY EMPLOYEES RECEIVED TRAINING ON THE LEGAL DEFINITION OF WORK OR THE DEFINITION OF COMPENSABLE TIME UNDER THE FLSA

Testimony, argument and/or evidence regarding whether FDNY employees received training on the legal definition of work or the definition of compensable time under the FLSA must be excluded because it is both irrelevant and unfairly prejudicial to Defendants.   The primary liability issues for the jury to consider in this case are: (i) whether Defendants maintained a policy or practice of requiring pre- and post-shift work without compensation; and (ii) whether Defendants had knowledge of Plaintiffs performing pre- and post-shift work without compensation.   There is no requirement under the FLSA that employers provide training to employees on the legal meaning of "work" or "compensable time."   Whether Defendants provided this training or not is irrelevant to the fundamental issues in this case, and therefore, this line of questioning is precluded under Federal Rule of Evidence 402.

Further, even if the Court determines that this line of questioning bears some minimal relevance, allowing the introduction of testimony and evidence regarding Defendants' failure to provide training on these topics will unavoidably create the misleading impression that Defendants breached their legal obligations.   The risk of jury confusion and significant unfair prejudice to Defendants is substantial.   This unfair prejudice cannot be cured by a jury

16

instruction stating that Defendants had no legal obligation to train employees on the legal meaning of work or compensable time.  As such, evidence and argument regarding a lack of training on the definition of compensable work under the FLSA must also be precluded under Federal Rule of Evidence 403.

Clearly recognizing the prejudicial potential of this line of questioning, Plaintiffs' counsel consistently asked their clients during their depositions whether they received training on the definition of work or compensable time under the FLSA, even though the *law does not require any such training*.  Plaintiffs' counsel's questioning consisted of the following:

Q: "Did the City ever provide you with any training on what is FLSA compensable work?"

A: "No."

Q: "Has a lieutenant ever discussed with you what is compensable work under the FLSA?"

A: "No."

Ekelman Decl., Exh. C, Perry Dep. Tr. at 172.  Plaintiffs' counsel posed similar questions, in sum and substance, to other Plaintiffs who sat for a deposition.  See e.g., id., Bilgore Dep. at 125-26; Estick Dep. at 130.

Evidence that Plaintiffs did not receive training on the legal definition of work or compensable time under the FLSA is irrelevant to the issues the jury is tasked with deciding at trial.  Notably, nowhere in the hundreds of pages of briefing on the various motions filed in this case have Plaintiffs once argued that the reason they did not submit an overtime request to be paid for pre- or post-shift work was because they did not understand that the tasks they performed constituted work.  Significantly, the term "work" is not defined in the FLSA and is an

extensively litigated term. See Donato v. Serv. Experts, LLC, 2018 U.S. Dist. LEXIS 167511, *10 (N.D.N.Y. Sept. 28, 2018).  Accordingly, whether Plaintiffs received training on the legal definition of work or compensable time is utterly irrelevant to the trial issues in this case, and any such testimony, argument or evidence should be excluded.  See Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) *the fact is of consequence in determining the action*.") (emphasis added).

Further, even if testimony and evidence regarding whether Defendants provided training on the legal definition of work is relevant—which it is not—it is still inadmissible because its probative value is substantially outweighed by its undeniable unfair prejudicial impact. Information regarding Defendants' alleged lack of training on this topic will inevitably create the impression that Defendants failed to fulfill their duties under the FLSA.  Because the law does not require any such training, shaping the jury's impressions in this way is deeply prejudicial to Defendants and also confusing for the jury.  While not all prejudice is unfair, the advisory committee's notes to Fed. R. Evid. 403 are very clear that "[p]rejudice is . . . unfair if the evidence was designed to elicit a response from the jurors that is not justified by the evidence." Fed. R. Evid. 403, advisory committee's notes.  That is the sole purpose for the introduction of evidence regarding a lack of training on the legal definition of work or compensable time here. Plaintiffs are seeking to elicit a reaction from the jury that Defendants acted negligently—or breached their legal responsibilities—by not providing certain training that *is not required under the law*.  Accordingly, introduction of any argument, testimony, or evidence regarding Defendants' failure to provide training to Plaintiffs on the definition of work or compensable time under the FLSA must be precluded under Fed. R. Evid. 403.

18

Thus, for the above stated reasons, Defendants respectfully request that this Court preclude Plaintiffs from offering testimony, argument or evidence regarding whether FDNY employees received training on the legal definition of work or the definition of compensable time under the FLSA, which is wholly irrelevant to the issues for the jury and unfairly prejudicial to Defendants.

**III.   PLAINTIFFS SHOULD BE PRECLUDED FROM QUESTIONING PLAINTIFFS JAMIL PEREZ AND EDWIN GONZALEZ REGARDING THEIR EXPERIENCES, JOB DUTIES AND RESPONSIBILITIES AS LIEUTENANTS**

During the course of discovery in this case, which concluded in 2016, Defendants deposed 38 Plaintiffs, 32 of whom were EMTs or Paramedics.  Both Plaintiffs Perez and Gonzalez were promoted to Lieutenant well after the close of discovery.  Plaintiff Perez was promoted to Lieutenant on October 2, 2017.  Plaintiff Gonzalez was promoted on January 31, 2019.  Plaintiffs did not inform Defendants of their intent to question Plaintiffs Perez and Gonzalez regarding their experiences and responsibilities as Lieutenants until the eve of trial, when Plaintiffs identified the description of their expected testimony in their witness list.

Conversely, Plaintiff Andrea Katsanakos was also subject to a deposition in this case, *and she was a Lieutenant at the time she was deposed*.  Katsanakos Dep. 10-11.  Notwithstanding that fact, because Plaintiff Katsanakos did not claim any damages for the period of time that she worked as a Lieutenant, the questioning at her deposition was predominantly limited to her time as a Paramedic.  On May 9, 2019, in a letter to Defendants, Plaintiffs disclosed that they intended to call Plaintiff Katsanakos as a trial witness to testify about her role and responsibilities as a Lieutenant.  Ekelman Decl. Exh. D.  As a result, the parties mutually agreed to schedule a second deposition of Plaintiff Katsanakos.[4]  Plaintiffs Perez and Gonzalez were not identified in the May

---

[4]      This deposition was originally scheduled for August, but it was postponed until September due to a medical issue suffered by Plaintiff Katsanakos.

19

9, 2019 correspondence, and therefore, no arrangements were made to schedule their pre-trial depositions.

A.     **Defendants Would Suffer Unfair Prejudice if Plaintiffs Perez and Gonzalez Are Permitted to Testify Regarding their Experiences as Lieutenants Because Defendants Did Not Have an Opportunity to Depose them about these Topics**

Permitting Plaintiffs Perez and Gonzalez to testify at trial about their current job duties as Lieutenants will cause Defendants to suffer significant unfair prejudice, and therefore, this line of questioning must be precluded under Fed. R. Evid. 403.  Courts have consistently held that a party is prejudiced if it is not given a fair opportunity to depose a trial witness prior to trial.  See L-3 Communs. Corp. v. OSI Sys., 2006 U.S. Dist. LEXIS 19686, at *15-16 (S.D.N.Y. Apr. 11, 2006) (holding that party would suffer harm if they were not given an opportunity to take deposition of trial witness prior to trial); Bynum v. Metro. Transp. Auth., 2006 U.S. Dist. LEXIS 98617 at *8 (E.D.N.Y. Nov. 21, 2006) (requiring the pre-trial deposition of a previously undisclosed witness to avoid prejudice to the opposing party).

Plaintiffs had ample opportunity during the course of this litigation to seek further depositions of Perez and Gonzalez and failed to do so.  Even when Plaintiffs sought a further deposition of Plaintiff Katsanakos on this subject area, they neglected to raise their intention to seek similar testimony from Plaintiffs Perez and Gonzalez.  Now, on what is, in effect, the eve of trial, Plaintiffs alert Defendants to this novel strategy.  Defendants object to any testimony being elicited from Perez or Gonzalez as concern their roles as Lieutenants.

To the extent Plaintiffs may suggest a continuance in order to take additional depositions, Defendants object.  While courts will sometimes grant a continuance of a trial to permit depositions and avoid any unfair prejudice (see L-3 Communs. Corp., 2006 U.S. Dist. LEXIS 19686 at *16), a continuance is not feasible here.  This trial has been scheduled since June 10,

2019 and is anticipated to last almost four full weeks.  A continuance, requiring another uninterrupted four-week block of time on the Court's calendar, could delay this trial by months, if not the better part of a year.[5]  As such, it is simply not feasible to delay the trial to permit the depositions of Plaintiffs Perez and Gonzalez.  It is similarly untenable to require the depositions of these witnesses before trial.  With only a few weeks remaining before the start of trial, requiring Defendants to schedule, prepare for and take the time to depose two additional witnesses would be unfairly prejudicial.  This is especially true given that Plaintiffs could have— and did in the case of Plaintiff Katsanakos—made Defendants aware of their intention to question Plaintiffs Perez and Gonzalez about their experiences as Lieutenants several months earlier.  Defendants should not be penalized for Plaintiffs' failure to disclose this information until the eve of trial.  As such, the preclusion of testimony regarding Plaintiffs' Perez's and Gonzalez's experiences and responsibilities as Lieutenants is necessary to avoid significant unfair prejudice to Defendants. Further, as will be discussed more fully below, this testimony has limited probative value and is largely cumulative.

> **B.**    **Plaintiffs' Perez's and Gonzalez's Testimony Regarding their Experiences and Responsibilities as Lieutenants must also Be Excluded Under Fed. R. Evid. 403 Because it Is Cumulative and Duplicative**

Fed. R. Evid. 403 "excludes relevant evidence where its probative value is 'substantially outweighed' by considerations of, *inter alia*, needless presentation of cumulative evidence.  A district judge has discretion to exclude evidence if it is cumulative of evidence already in the record." Colon, 199 F.Supp.2d at 96, *alteration in original*; see also International Minerals & Res., S.A., 96 F.3d at 596.  Here, Plaintiffs seek to question Plaintiffs Perez and Gonzalez at trial about both their responsibilities as EMTs, as well as their responsibilities as Lieutenants.

---

[5]    The Court already informed the parties that it has another trial scheduled to begin the week of November 4, 2019.  Dkt. # 224.

Notwithstanding the unfair prejudice Defendants would suffer if Plaintiffs Perez and Gonzalez are permitted to testify about their experiences and duties following their promotions—which warrants preclusion of any such testimony—this testimony also warrants preclusion because it is cumulative and duplicative.

In addition to Plaintiffs Perez and Gonzalez, Plaintiffs identify two other witnesses— Plaintiff Katsanakos and Lieutenant Jose Gonzalez—who will testify regarding the job duties of a Lieutenant. Specifically, Plaintiffs' witness list contains the following description for the testimony of both Plaintiffs Perez and Gonzalez: "Job duties and responsibilities, including pre-shift and post-shift unpaid work, management knowledge of same; *Job duties of a Lieutenant*." Ekelman Decl., Exh. E (emphasis added). The testimony description for Jose Gonzalez states "Job duties and responsibilities of plaintiffs and Lieutenants," and the testimony description for Plaintiff Katsanakos includes "Job duties of a Lieutenant." Id. In other words, Plaintiffs have identified four separate witnesses to testify about the "job duties of a Lieutenant."

This Court has granted motions *in limine* to exclude testimony that "may be duplicative and cumulative." See MF Global Holdings Ltd., 232 F.Supp.3d at 571 (excluding the testimony from experts whose opinions and bases for their opinions in expert reports overlapped); see also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 2008 U.S. Dist. LEXIS 37331, at *49 (S.D.N.Y. May 7, 2008) (informing parties that cumulative testimony will be precluded at trial). It is "ordinarily [] inappropriate for any party to call two witnesses to offer the same testimony because such testimony would be duplicative." Giladi v. Strauch, 2007 U.S. Dist. LEXIS 8666, at *34-35 (S.D.N.Y. Feb. 6, 2007). As such, it is entirely impermissible for Plaintiffs to call four separate witnesses to testify about the job duties of Lieutenants. The introduction of testimony from Plaintiffs Perez and Gonzalez regarding their experiences as Lieutenants is of limited

22

probative value—given that there are still two other witnesses identified to testify about the same topics—and would unnecessarily delay a trial that is already slated to last nearly four full weeks. When accounting for the significant unfair prejudice Defendants would suffer should this testimony be permitted, it is clear that Fed. R. Evid. 403 precludes Plaintiffs Perez and Gonzalez from testifying about their experiences as Lieutenants at trial.

**IV.    PLAINTIFFS SHOULD BE PRECLUDED FROM CALLING CHIEF CESAR ESCOBAR OR ASSISTANT COMMISSIONER STEPHEN RUSH AS TRIAL WITNESSES BECAUSE THEIR TESTOMONY HAS LIMITED OR NO PROBATIVE VALUE AND IS CUMULATIVE OF OTHER TRIAL WITNESSES' TESTIMONY**

**A.    <u>Plaintiffs Should Be Precluded from Calling Chief Cesar Escobar as a Trial Witness Because His Testimony Is Entirely Duplicative of the Testimony of Trial Witness Chief Christopher Bilz</u>**

Because Chief Cesar Escobar's testimony is entirely duplicative of the scope of the testimony of trial witness Chief Christopher Bilz, Plaintiffs should be precluded from calling Chief Escobar as a witness. Chief Escobar was identified by Defendants as a 30(b)(6) witness on CityTime training and was deposed in this capacity—as a representative of the City as opposed to in his individual capacity—on March 29, 2016. In the time since Chief Escobar's deposition, Chief Bilz was appointed as the Division Chief for the Bureau of Training. Defendants identified Chief Bilz as a trial witness, and he was deposed by Plaintiffs on July 24, 2019. In an effort to streamline the witnesses for trial, Defendants offered that Chief Bilz would "step in the shoes" of Chief Escobar and be subject to impeachment at trial should his testimony be inconsistent with Chief Escobar's testimony from his 30(b)(6) deposition. Without articulating a reason, Plaintiffs refused this proposal and intend to call both Chief Escobar and Chief Bilz as trial witnesses, despite the complete overlap in the scope of their testimony.

This Court must exclude testimony under Fed. R. Evid. 403 that "may be duplicative and cumulative." See MF Global Holdings Ltd., 232 F.Supp.3d at 571 (excluding testimony from experts as duplicative whose opinions and bases for their opinions in expert reports overlapped). It is "ordinarily [] inappropriate for any party to call two witnesses to offer the same testimony because such testimony would be duplicative." Giladi v. Strauch, 2007 U.S. Dist. LEXIS 8666, at *34-35. These tenets warrant preclusion of Chief Escobar's testimony here. As the current Division Chief for the Bureau of Training, the scope of Chief Bilz's knowledge and testimony is entirely duplicative of the scope of Chief Escobar's 30(b)(6) deposition. As such, there is no probative value of having both Chief Escobar and Chief Bilz testify. Further, there is no prejudice to Plaintiffs if Chief Escobar is precluded from testifying because Defendants offered—and remain willing—to stipulate that Chief Escobar's deposition testimony can be used to impeach Chief Bilz on cross-examination at trial. Plaintiffs' request to call Chief Escobar as a trial witness (who was only deposed in his official capacity as a representative of the City) serves no purpose other than to needlessly delay the trial. As such, Plaintiffs should be precluded from calling Chief Escobar as a trial witness.

B.      **Plaintiffs Should Also Be Precluded from Calling Stephen Rush as a Trial Witness Because His Testimony has No Probative Value and Is Entirely Cumulative of the Testimony of Georgia Pestana**

Similarly, Plaintiffs should be precluded from calling Stephen Rush as a trial witness given that it is undisputed that his testimony is irrelevant and entirely duplicative of that of trial witness Georgia Pestana. In Appendix A to the proposed Pre-Trial Order, Plaintiffs indicated that they are calling Mr. Rush and Ms. Pestana for the exact same purpose – that is to testify as to "What, if any, efforts defendants made to comply with the FLSA and whether defendants' violations of the FLSA were reckless and/or willful." Mr. Rush is the FDNY's Assistant

Commissioner for Budget and Finance and Ms. Pestana is currently the Acting Corporation Counsel for the City of New York and, at the time of her deposition, was the First Assistant Corporation Counsel.[6]

> In Mr. Rush's deposition he testified as follows:
>
> Q: Is there an individual, either position or job title or name—whatever is easiest to do—who is ultimately responsible for ensuring that [EMS] operations orders comply with the Fair Labor Standards Act?
>
>     Ms. Ekelman: Objection to form.
>
> A: In the Fire Department, these would be reviewed on matters of FLSA with the Law Department.
>
> Q: And so it's the Law Department that is ultimately responsible?
>
> A: Correct.

Ekelman Decl., Exh. F, Rush Dep. at 44-45. Mr. Rush goes on to testify that he has no knowledge of what steps, if any, the Law Department takes to ensure compliance with the FLSA. See id. at 45-46. He then testifies that the Fire Department's "process when dealing with FLSA issues is to make sure that the Law Department signs off on them." Id. at 46-47.

As such, Mr. Rush's testimony is that the Fire Department relies entirely on the Law Department in order to ensure compliance with the FLSA. This is confirmed by Plaintiffs' counsel's statement at the end of Mr. Rush's deposition that: "This was supposed to be a 30(b)(6) [deposition] as to the City's efforts [to comply with the FLSA]. So far all we heard is that the L[aw] Department is in charge, but there has been no information about what the L[aw] Department does, if anything, and that was clearly what we were contemplating this deposition cover." See id. at 86-87. Given that Ms. Pestana will be called to testify as to what steps the

---

[6]    As the Court is aware, the Office of the Corporation Counsel is commonly referred to as "the Law Department."

City takes to ensure compliance with the FLSA, Mr. Rush's testimony is both irrelevant and cumulative and therefore should be excluded.

## V.   PLAINTIFFS SHOULD BE PRECLUDED FROM OFFERING EVIDENCE REGARDING FLSA-EXEMPT CITY EMPLOYEES

Plaintiffs seek to introduce at trial eleven emails (Exs. P36 through P46) that pertain to the CityTime certification language.  See Ekelman Decl., Exh. G.  Because these emails do not pertain in any way to Plaintiffs' claims, they must be excluded under Rules 401 and 403 as irrelevant and confusing.  By way of background, the vast majority of City employees utilize CityTime as a timekeeping device.  However, not all of these CityTime users are eligible to earn overtime under a collective bargaining agreement or the FLSA.  Plaintiffs' proposed Exhibits P36 through P46 are emails from 2009 concerning issues raised by two City employees when CityTime was first rolled out.  Specifically, these emails address the applicability of the CityTime certification language to those employees who are not eligible to earn overtime.  The first iteration of the CityTime certification language stated that: "I hereby certify that the time shown correctly represents the attendance and activities for the week indicated and that I have requested compensation for any time that I worked in excess of my scheduled hours.  Any time outside my scheduled hours, i.e. when I may logged in/out earlier/later than my scheduled time, for which I have not requested compensation, was time not worked."  See P39 at D032125.

Days after CityTime was first rolled out to City agencies, Georgia Pestana, who is listed as a trial witness for both Plaintiffs and Defendants, received an inquiry from a City agency regarding the applicability of the certification language to employees not entitled to receive overtime.  When shown Plaintiffs' Exhibits 36 to 46 at her deposition, Ms. Pestana testified that these emails were in regard to reported "confusion" among those "employees who were not normally or were not entitled to overtime because they were either not covered by a collective

bargaining agreement or were exempt under the FLSA." See Ekelman Decl., Exh. H, Pestana Dep. at 60-70. Because of this "confusion," Ms. Pestana testified that the CityTime certification language was changed to read: "The time shown correctly represents my attendance and activities for the week indicated. **If I am an employee eligible to earn overtime compensation under the FLSA and/or a collective bargaining agreement**, I also certify that I have requested compensation for any time that I worked in excess of my schedule hours and that any time outside my scheduled hours, i.e. when I may have logged in/out earlier/later than my scheduled time, for which I have not requested compensation, was time not worked." Id. (emphasis added).

Given this background, it is clear that Plaintiffs' Exhibits P36 through P46 have absolutely no bearing on their FLSA claims in this case. The only arguably relevant inquiry here is whether or not Plaintiffs themselves understood the certification language. Exhibits P36 through P46 are completely irrelevant to that inquiry. In fact, Ms. Pestana testified that she has no knowledge that EMTs and/or paramedics raised any concerns about the certification language. See Id. at 69. Plaintiffs can certainly testify as to their understanding of the Certification, and therefore, evidence of concerns raised by non-parties and, more importantly, by individuals not even entitled to receive FLSA overtime, is simply not relevant to Plaintiffs' claims and therefore must be excluded pursuant to Rule 402.

Additionally, the emails that make up exhibits P36 through P49 must be excluded because they contain inadmissible hearsay. Federal Rule of Evidence 801(c) defines hearsay as a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Exhibits P36 through P46 fall squarely within the definition of hearsay. Plaintiffs are seeking to establish that there were "issues" and "confusion" surrounding the CityTime certification via

emails from two City employees, Cynthia Mathis and Lilia "Mouse" Ashjian, neither of whom is testifying at trial.  See P36-43; P45-46.  Clearly, Plaintiffs are seeking to offer these emails to prove that there were, in fact, "concerns" and "confusion" related to the certification language. As such, these emails contain inadmissible hearsay and must be excluded.

## VI.    PLEADINGS AND OTHER LEGAL DOCUMENTS ARE IMPROPER AS TRIAL EXHIBITS AND MUST BE EXCLUDED

Plaintiffs seek to introduce at trial several legal pleadings and similar documents that are inappropriate as trial exhibits.  Specifically, Plaintiffs' proposed exhibit list includes the Complaint (Ex. P71), the Third Amended Complaint (Ex. P72), Defendants' Answer to the Third Amended Complaint (Ex. 73) and four notices of depositions served in this matter pursuant to Rule 30(b)(6) (Exs. P67-P70).

With respect to the pleadings, these documents are simply not evidence.  The Complaint and Third Amended Complaint consist overwhelmingly of self-serving statements, unsubstantiated allegations, and hearsay that is not probative in this action.  Further, the pleadings in this matter contain information that would be extremely confusing to the jury.  For example, the Complaints contain allegations pertaining to non-testifying Plaintiffs and to claims that are not before the jury (i.e. Plaintiffs' claims pertaining to the calculation of their overtime rate and liquidated damages).  Consequently, they should be excluded from admissibility at trial. Additionally, all the pleadings should be excluded from evidence on the independent ground that their admission violates a stipulation between the parties that no evidence would be offered at trial related to the claims of Fire Protection Inspectors.[7]

---

[7]    The parties resolved the claims of Fire Protection Inspectors via a settlement agreement dated August 16, 2019.  This agreement provides, in part, that: "The parties agree that they, their counsel and all witnesses, shall be prohibited at the trial commencing in this matter in October 2019 from offering, making reference to, commenting upon, introducing testimony or documents regarding, or presenting any argument pertaining to any claims brought

Plaintiffs also seek to introduce four Rule 30(b)(6) Notices that were served on Defendants in this action (Exs. P67-P70).  Once again, these attorney-drafted notices are not evidence.  What is evidence, however, is the testimony elicited pursuant to these notices.  To that end, Plaintiffs have identified all the individuals deposed pursuant to these notices as trial witnesses and presumably will ask them questions pertaining to the topics identified in the notices.  There is absolutely no need to confuse the jury by showing them attorney-drafted discovery notices when they will have live testimony on the topics covered by those notices.  As such, Plaintiffs' exhibits P67-P70 should be excluded.

## VII.    LOUIS LANIER'S EXPERT REPORTS AND ATTACHMENTS SHOULD BE EXCLUDED

Plaintiffs seek to introduce two different expert reports drafted by Dr. Louis Lanier—one dated May 17, 2016 ("the May 2016 Report") and one dated September 3, 2019 ("the September 2019 Report).  See Ekelman Decl., Exh. I, May 2016 Report and September 2019 Report annexed collectively.  Both reports must be excluded.

As an initial matter, the September 2019 Report is untimely given that it was served on defendants only 34 days prior to trial and several years after the close of expert discovery.  *See* Fed. R. Civ. Pro. at 26(a)(1)(D)(i)(requiring disclosure of expert reports 90 days prior to trial). Despite plaintiffs' characterization of the September 2019 Report as simply "supplemental" – this latest report alters the methodology by which Dr. Lanier calculates plaintiffs' alleged damages.  The May 2016 Report presented two theories of liability as to alleged uncompensated time whereas the September 2019 Report proposes just one theory of liability as to this claim. The September 2019 Report is silent as to the reason one theory was chosen over the other.  The late production of this report is what Rule 26 is designed to prevent.  See Ebewo v. Martinez,

---

by the Settling Plaintiffs, this Agreement and/or any hearing held in connection with this Agreement."  See Ekelman Decl. ¶ 12.

309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004); see also Rule 26(a)(2)(D)(i)(requiring disclosure of expert reports 90 days prior to trial).[8]

Setting aside the timeliness issue, given that Dr. Lanier will testify at trial, his reports are cumulative of his live testimony. Further, the reports, as well as their attachments, contain inadmissible, and self-serving, hearsay.  With respect to the May 2016 Report, most notable is the report's consistent references and citations to the expert report created by Dr. Christopher Erath.  In fact, the May 2016 Report's sole purpose is to "respond to the opinions set forth by Dr. Christopher Erath in his report, dated April 18, 2016."  The May 2016 Report goes on to recount Dr. Erath's purported conclusions, opinions, notations and statements.   Such hearsay is impermissible under Fed. R. Evid. 802.  Additionally, the May 2016 Report should be excluded as it will be confusing to the jury given that it was drafted solely in response to Dr. Erath's report—which is not being offered in to evidence.

Moreover, both reports contain references and analyses regarding claims that are not before the jury.  On August 26, 2019, the Court So-Ordered a stipulation which provided that "the following claims will ***not*** be tried by the jury: (a) plaintiffs' allegations that defendants failed to properly include night shift differential and/or other assignment premiums and differentials in determining the plaintiffs' regular rates of pay used to calculate the overtime rate paid to plaintiffs for overtime worked; and (b) plaintiffs' allegation that defendants failed to properly pay overtime at a rate of time and one-half when such overtime was paid in either cash or compensatory time."  See Dkt. # 223.  Here, the May 2016 Report contains pages and pages of discussion and analysis pertaining to the two claims listed above.  Similarly, the September 2019 Report at footnote 5 makes a reference to "two other claim types not presented in this report."

---

[8]    In light of the new expert report served on September 3, 2019, Defendants respectfully request that they be permitted to serve an updated rebuttal expert report from their expert, Dr. Christopher Erath.   Defendants respectfully request that they have until September 30, 2019 to serve such rebuttal.

The introduction of these exhibits into evidence would therefore cause inevitable confusion for the jury as to exactly which claims they are being asked to resolve.  Such confusion outweighs their probative value and calls for exclusion of the reports under Fed. R. Evid. 403.

## VIII.   THE 107 PERFORMANCE EVALUATIONS PLAINTIFFS SEEK TO INTRODUCE SHOULD BE EXCLUDED BECAUSE THEY HAVE LIMITED PROBATIVE VALUE AND WILL SERVE TO CONFUSE THE JURY

Plaintiffs seek to introduce into evidence 107 separate performance evaluations for Plaintiffs.[9]  These 107 performance evaluations must be excluded under Rules 401 and 403. There is absolutely no probative value to admitting into evidence <u>all</u> of these proposed exhibits. A review of the 107 performance evaluations identified by Plaintiffs reveals that only a small smattering of the evaluations have even an arguably tangential relevancy to this case.  But rather than take the time to cull through the evaluations and identify only those with some arguable relevancy to this case, Plaintiffs have taken a "kitchen sink" approach by seemingly identifying any and all evaluations in their possession.  This indolent approach must be rejected by the Court.

More troubling, however, is that 19 of these performance evaluations are for 14 Plaintiffs who will not be testifying at trial.  Introducing performance evaluations for Plaintiffs about whom the jury will receive absolutely no other evidence will only serve to distract and confuse the jury.  Had Plaintiffs wanted to introduce evidence regarding these 14 individuals, they should have identified them as trial witnesses.  They chose not to do so, and Plaintiffs must now be bound to the evidence relevant to those Plaintiffs who are testifying.  Additionally, if Plaintiffs are permitted to introduce performance evaluations for Plaintiffs who are not testifying,

---

[9]      Plaintiffs' Exhibit List actually lists 116 performance evaluations as exhibits.  However, upon a review of the evaluations identified, it is apparent that Plaintiffs identified nine evaluations twice.  Defendants assume that this is an error on Plaintiffs' part and not an effort to enter duplicative exhibits into the record at trial.

Defendants would be prejudiced in that they would have no opportunity to cross-examine these individuals regarding the evaluations.

Further, even if all 107 performance evaluations were somehow relevant, they must be excluded as their admission will be needlessly cumulative and cause an undue delay. Logistically, Defendants do not comprehend how these evaluations would be presented to the jury without unduly delaying these proceedings, wasting time or needlessly presenting cumulative evidence.  Even if Plaintiffs only expend five minutes of trial time per evaluation (a conservative estimate considering Plaintiffs must move for each evaluation's admission and then question a witness on the evaluation), this would result in nearly 10 hours of testimony solely on evaluations.  This type of cumulative evidence is exactly what Fed. R. Evid. 403 guards against. As such, Plaintiffs should be precluded from offering all 107 performance evaluations in to evidence. [10]

---

[10] To the extent the Court permits Plaintiffs to introduce some or all of the performance evaluations, Defendants respectfully reserve the right to call the authors of the performance evaluations as rebuttal witnesses.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to enter an Order *in limine*, barring the introduction of any testimony, evidence, or argument, whether direct or indirect, on the above irrelevant and prejudicial topics.

Dated: New York, New York
September 16, 2019

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000
Felice.Ekelman@jacksonlewis.com
Mark.Mancher@jacksonlewis.com
Michael.Frankel@jacksonlewis.com

-and -

Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007
aoconnor@law.nyc.gov

By:    *s/Felice B. Ekelman*
Felice B. Ekelman
Mark Mancher
Michael A. Frankel
Andrea O'Connor

*ATTORNEYS FOR DEFENDANTS*